### BLALOCK *v.* STATE.*

(In Banc. June 6, 1927. Suggestion of Error Overruled June 23, 1927.)

[113 So. 627. No. 26444.]

1. CRIMINAL LAW. *Instruction that verdict "will be" in one of enumerated forms embracing all possible hypotheses, held not erroneous, as precluding disagreement, because not using words "may be."*

   Under section 1512, Code of 1906 (section 1270, Hemingway's Code), prescribing the power of the jury to fix the punishment in capital cases, it is not reversible error for the court to instruct the jury that their verdict "will be," instead of "may be," where the instruction gives the three different hypotheses authorized in capital cases, and a hypothesis authorizing manslaughter, and one authorizing not guilty. This does not preclude the jury from disagreeing, but means that, if they agree on a verdict, the verdict will be in one or the other of the forms stated.

2. HOMICIDE. *Instruction stating maximum punishment for manslaughter held erroneous; instruction as to maximum punishment for manslaughter held not prejudicial, not being calculated to lead jury to think it would be light.*

   While it is error to instruct the jury as to the punishment that will be inflicted in case of a verdict of manslaughter, it is not reversible error, where the instruction states the maximum

(1)

punishment that may be inflicted, and is not calculated to lead the jury to believe that the defendant will receive light punishment. Ellerbe v. State, 79 Miss. 10, 30 So. 57, distinguished.

3. HOMICIDE. *Defendant cannot complain of instruction as to manslaughter, or conviction therefor, where evidence would warrant conviction for murder.*

The giving of a manslaughter instruction in capital cases, where the evidence for the state would warrant a conviction for murder, is not error of which the defendant can complain. Calicoat v. State, 95 So. 318, and Strickland v. State, 95 So. 318, both in 131 Miss. 169.

*Corpus Juris-Cyc. References: Criminal Law, 16CJ, p. 1027, n. 22; 17CJ, p. 361, n. 81; Homicide, 30CJ, p. 424, n. 65.

APPEAL from circuit court of Wilkinson county.
HON. R. L. CORBAN, Judge.

E. B. Blalock was convicted of manslaughter, and he appeals. Affirmed.

*R. S. Stewart,* and *Tucker & Tucker,* for appellant.

*J. A. Lauderdale,* Assistant Attorney-General, for the state.

ETHRIDGE, J., delivered the opinion of the court.

Appellant, E. B. Blalock, was indicted for the murder of Lee McGraw, and was tried and convicted of manslaughter, and sentenced to three years in the penitentiary, from which he appeals.

During the latter part of October, 1925, E. B. Blalock and his son, W. B. Blalock, killed Lee McGraw. It appears from the record that Lee McGraw and his brother were traveling along the public highway in a wagon drawn by mules. Blalock and his son came up behind in a truck, and requested McGraw to give them more road. McGraw seems to have replied that they had one-half of the road, and that they could pass if they wanted

to. Blalock asked McGraw if he was armed, to which he replied that he was not, that he did not need a pistol, and to get out and they would settle it. From this a difficulty arose in which Lee McGraw was killed, being shot twice by E. B. Blalock, and his throat cut by W. B. Blalock. The Blalocks seem to have been wounded in the difficulty.

Among other instructions the court charged the jury on the form of the verdict in the following language:

"The court instructs the jury that in this case their verdict will be in one of the following forms, to-wit: (1) 'We, the jury, find the defendant guilty as charged.' In this event, the court will sentence the defendant to be hanged. (2) 'We, the jury, find the defendant guilty as charged, and fix his punishment at life imprisonment in the state penitentiary.' (3) 'We, the jury, find the defendant guilty as charged, but certify that we cannot agree on the verdict.' In this event, the court will fix the punishment at life imprisonment in the state penitentiary. (4) 'We, the jury, find the defendant guilty of manslaughter.' In this event, the court will fix the punishment at imprisonment in the state penitentiary for a term of years, not to exceed twenty years. (5) 'We, the jury, find the defendant not guilty.' "

It is urged that the use of the words "will be," instead of "may be," should cause a reversal of the case, because it shuts the jury off from disagreeing on a verdict; that section 1512, Code of 1906 (section 1270, Hemingway's Code), prescribes the power of the jury to fix punishment at life imprisonment in capital cases, and the word "may" is used in the statute, and that the words "will be," instead of "may be," directs the jury to return a verdict under one of the forms set out in the above instruction, and denies them the right to disagree altogether, and the defendant had the right to have the jury understand that they had the right to disagree.

We think the instruction, for this reason, does not constitute reversible error: That the instruction is construed

to mean that, if the jury returns a verdict in the case, it will be for one of the hypotheses stated in the instruction, and that it did not involve the jury's right to disagree, because of irreconcilable opinions entertained individually by different jurors. The instruction ought to have been more carefully drawn, but we do not think it was misleading to the jury in this particular.

It is next argued that the instruction on manslaughter is erroneous, in that it fixes the kind and amount of punishment that would be inflicted, or could be inflicted under the law, for that crime, whereas the jury had no right to be informed of the punishment, or to consider it. The cases of *Johnson* v. *State,* 78 Miss. 627, 29 So. 515, and *Ellerbe* v. *State,* 79 Miss. 10, 30 So. 57, are relied upon for this position. In *Johnson* v. *State, supra,* the court refused an instruction requested by defendant, which instruction, as drawn, had the hypothesis of manslaughter, and the court held this instruction was rightfully refused for two reasons—one, that it did not define manslaughter; and, second, that the jury had no right to be informed of the character of punishment that would follow in conviction of manslaughter. This case is not applicable here, because the court always has the right to refuse an instruction, unless it properly presents the law. In the *Ellerbe* v. *State case, supra,* the court condemned an instruction which told the jury that, under a conviction for manslaughter, the court may fine the defendant in any sum not less than five hundred dollars, or imprison him in the county jail for not more than one year, or both, or may sentence him to the penitentiary for not less than two years. The court, in discussing this, said:

"We think the granting of this charge reversible error, because of its third clause. It is faulty in stating the punishment, and that in its milder forms. It looks too much like an invitation to the jury to compromise on the lesser offense. The jury have nothing to do with, and should be told nothing of, the character or degrees of punishment in any case whatever, except in murder, in

the instance of the first, second, and fourth clauses of the charge, because of the statute. It may be that this charge and it alone, produced the manslaughter verdict.''

In the case before us, the instruction on the punishment for manslaughter does not call the jury's attention to the minimum punishment, and does not, by inference, lead the jury to believe that, if so convicted, a light punishment will be inflicted. We think this distinction important between the Ellerbe case and this one. It is one thing to hold out the definition of a minimum punishment, and another to tell the jury of a maximum punishment. It was, in our opinion, the singling out, in the Ellerbe case, the minimum features of punishment for manslaughter, that produced the reversal therein. It is difficult to see how it prejudices the right of a person being tried for a crime for the jury to know what the punishment is that may follow a conviction for that crime. It is true that the court administers the punishment, except in capital cases, and some others not here involved, and that the jury should not be told anything in reference to what that punishment will be; but we fail to see how the present instruction prejudiced the defendant's rights. It certainly did not lead the jury to believe he would be dealt with leniently. The maximum was stated, and the minimum was left out.

In so far as the effect on the jury is concerned, we cannot see it had any harmful effect upon his rights. Anything less than twenty years for manslaughter is in the discretion of the court, and it does in no wise prejudice the defendant's rights for the jury to know what the maximum would be. At least, we think it is apparent that his rights were not so prejudiced as to cause the court to reverse a judgment therefor. *Stevenson* v. *State,* 136 Miss. 22, 100 So. 525. We hold, therefore, that there is no reversible error in this objection to the instruction.

It is next contended that no element of manslaughter is involved in the killing; that it is either murder or self-defense, and that there is no middle ground, and no ele-

ment authorizing the giving of an instruction of manslaughter; and the cases of *Virgil* v. *State,* 63 Miss. 317; *Rester* v. *State,* 110 Miss. 689, 70 So. 881; *Walker* v. *State,* 123 Miss. 517, 86 So. 377; *Dye* v. *State,* 127 Miss. 492, 90 So. 180; *Ealy* v. *State,* 128 Miss. 715, 91 So. 417, and *Leavell* v. *State,* 129 Miss. 579, 92 So. 630, are relied upon by appellant.

This court, in *Calicoat* v. *State,* 95 So. 318, and *Strickland* v. *State,* 95 So. 318, both in 131 Miss. 169, considered and overruled the Rester case and all cases holding that doctrine, and readopted the view of this court as expressed in *Houston* v. *State,* 105 Miss. 414, 62 So. 421. The mischief that resulted from the decision in the Rester case is apparent to all who read these several decisions. Therein, because the trial judge incorrectly decided that an element of manslaughter existed in the case, and gave an instruction authorizing a conviction of manslaughter, and the jury, misjudging the facts, convicted the prisoner of manslaughter, this court reversed the case, and later discharged Rester, on the theory that, there being no element of manslaughter, he was entitled to be discharged on the verdict of the jury. That was followed in some other cases. In the Calicoat and Strickland cases, the court, after mature and painstaking consideration of decisions and the results that flowed therefrom, overruled them and held that a complainant could not complain of a conviction of manslaughter, when he should have been convicted of murder.

We decline to reconsider this proposition. It is one that, in view of the court's position in several past cases, ought to remain settled, and we decline to disturb the holding therein. We followed that in several cases, viz. *Stevenson* v. *State,* 136 Miss. 22, 100 So. 525; *White* v. *State,* 142 Miss. 484, 107 So. 755. It is true that in the case of *Ethel Jones* v. *State,* 109 So. 265, we held that, where a conviction of manslaughter was reversed, the party might be, on a new trial, tried upon the original

charge.   The decision in no wise modifies the cases of Calicoat and Strickland, *supra.*

It follows, from what we have said, that there is no reversible error in the record, and the judgment of the court below is affirmed.

*Affirmed.*