GILLESPIE, Presiding Justice:
Willie Rambus Marble was convicted in the Circuit Court of Lowndes County for the murder of James A. Lewis. He was sentenced to life imprisonment.
There was some conflict in the evidence, but the state offered ample proof to justify the jury in finding the facts as next stated. *589 The defendant and a number of his friends, including Armstead Gibbs and James Conway, were sitting at a table at the Windbreak Club when the proprietor began blinking the lights to indicate it was closing time. About that time an argument developed between Mitchell, the club proprietor, and Gibbs concerning Gibbs’ request that Mitchell sell beer after the time limit. Gibbs drew his .32 caliber pistol and pointed it at Mitchell, and Mitchell, who was standing behind the counter, obtained and pointed at Gibbs a .44 caliber revolver. The defendant was standing outside the counter and at some distance from Gibbs, pointing a .38 pistol at James A. Lewis, who was behind the counter near the cash register. Lewis was not armed. Conway was outside the counter and had in his possession a .25 caliber pistol which he said was inoperative because it did not have a clip and which he said he did not remove from his pocket.
Defendant told Lewis not to move toward the cash register, but Lewis did move slightly toward the cash register. Marble shot Lewis through the abdomen. Defendant then shot Mitchell, who survived. A few hours later Lewis died as a result of this wound.
After the shooting an investigation was made by a deputy sheriff who found a .38 slug near the spot where Lewis fell and where there was blood on the floor. Lewis was shot entirely through his body. No slug was found in his body.
Another .38 caliber slug was removed from Mitchell’s back. The deputy sheriff found two .25 caliber hulls somewhere in the building, but it is not shown where they were found. No other slugs or hulls were found by the officer.
We are of the opinion that there is no merit in the argument of defendant that the verdict is contrary to the overwhelming weight of the evidence. The testimony of the state’s witnesses fully justified a finding that defendant shot Lewis without reason or justification at a time when Lewis was unarmed and not threatening the defendant or anyone else.
Two of defendant’s assignments of error concern the discovery of new evidence which was the basis of a motion for a new trial. In this connection it was contended that the state suppressed evidence to the prejudice of the defendant. These two assignments, being related, are considered together. They arose under the following circumstances. After the jury returned a verdict of guilty, defendant’s attorney dictated into the record a motion for a new trial in which he stated that it had come to his attention that there was evidence of which he was not aware at the time of the trial. This evidence consisted of a ballistics report prepared by the State Crime Laboratory which showed that the two .25 caliber hulls found in the Windbreak Club after the shooting were fired from the .25 caliber automatic pistol owned by Conway. He contends that this would tend to corroborate defense witness Mitchell, who testified that Conway did have a gun in his hand pointed in the direction of Lewis at the time of the homicide. It was contended that this ballistics report would have been sufficient to raise a reasonable doubt as to the guilt of the defendant.
In response to this motion, which was not supported by proof, the district attorney stated that ballistics tests were run on the guns referred to by counsel, but the evidence was not presented because of a break in the chain of evidence, and for the further reason that it would bring in evidence of another crime. The district attorney pointed out in the statement that the two .25 caliber hulls found in the building were determined by the ballistics expert to have been fired from a .25 caliber pistol belonging to James Conway, but there were no .25 caliber projectiles found in the building at any time, and it is not shown how these .25 caliber hulls happened to be in the building.
*590 Thereafter a motion for a new trial was made in writing in which this same question was raised again, but no testimony was offered.
The fact that the .25 caliber hulls were fired by a .25 caliber pistol belonging to Conway is alone insufficient to justify reversal of this case. The various witnesses during the trial testified that there were four pistols involved: the .38 pistol which the witnesses testified was used by the defendant in shooting Lewis and Mitchell; a .32 caliber pistol possessed by Gibbs; a .44 caliber revolver possessed by Mitchell; and the .25 caliber pistol in the possession of the witness Conway. The fact that all of these pistols were involved was known to defense counsel and everyone else during the trial. The fact that only two .38 slugs and two .25 hulls were found after the shooting was known to all parties. No witness testified that Conway fired a .25 pistol or any other gun.
No attempt was made to connect the identity of the .25 caliber pistol which Conway had on the night of the homicide and the one secured by the officers, nor when or where the officers obtained the .25 caliber pistol. Moreover, the defendant offered no proof as to where the .25 caliber hulls were found in the building and whether there was any likelihood that they figured in the homicide. On the motion for a new trial, the ballistics expert could have been called to give direct evidence of whatever his testimony would have revealed. This was not done.
When defendant’s attorney dictated the motion for a new trial, the district attorney promptly made a full disclosure of the ballistics report and gave his reasons for not offering the testimony. One reason was that there was direct proof of who shot Lewis, that it would show another crime, and that there was a break in the chain of evidence which presumably made the evidence inadmissible. If this were not true, the district attorney was subject to being questioned, and the contrary could have been shown. A solemn judgment should not be set aside upon such insubstantial grounds as raised by these two assignments of error. The facts concerning the .25 caliber pistol, when and where the officers obtained it, and where the .25 caliber hulls were found by the officers could easily have been developed either during the trial or on motion for a new trial. Absent any effort in these respects, the judgment should not be set aside. Cf. Eslick v. State, 238 Miss. 666, 119 So.2d 355 (1960).
The facts were not sufficiently developed to indicate that the newly discovered evidence would probably produce a different result. Nor were the procedural requirements for granting a new trial on the basis of newly discovered evidence met. Grant, Sum.Miss.L. §§ 2621, 2622.
We are of the opinion that there is no merit in the contention that the trial court erred in overruling the motion for a new trial, or that the state suppressed evidence to the prejudice of the defendant.
The final assignment of error is that the judgment of conviction should be reversed because the trial court unjustifiably interrupted defense counsel. This assignment of error is based upon the following circumstances. Defendant’s attorney was examining witness Mitchell and asked:
Q. Did they bring Conway and Marble to the hospital with them?
A. Not together, they brought them in for identification.
Q. Which one did you identify as the one who shot Bo ?
BY THE COURT: May I see counsel in chambers ?
Nothing else transpired, and it is not shown why the trial judge desired to see *591 counsel in chambers. Of course, that could easily have been shown if it had any bearing upon the question. Thereafter defendant’s counsel moved for a mistrial on the ground that the judge’s statement that he wished to see counsel in chambers broke the chain of thought of counsel for defendant.
At another time counsel for defendant was questioning a witness and stated:
Q. Now ladies and gentlemen of the jury, follow this closely.
BY THE COURT: Counsel will not address the jury at this time.
BY MR. JORDAN: Excuse me, yes, sir.
Q. At this end of the bar were two men, one with an automatic—
The Court rapped on the bench with the gavel.
BY MR. JORDAN: I am asking a question.
BY THE COURT: I will see counsel in chambers.
There is nothing to show what transpired in chambers. Obviously, the trial court was correct in stating to counsel not to address the jury at that time. There is nothing whatsoever to indicate that the judge did anything wrong or prejudicial at this time. We find no merit in this assignment of error.
We are, therefore, of the opinion that the judgment of the trial court should be and it is affirmed.
Affirmed.
RODGERS, JONES, BRADY and SMITH, JJ., concur.
Rehearing denied.
All Justices concur.